﻿Citation Nr: AXXXXXXXX
Decision Date: 03/18/19 Archive Date: 03/18/19

DOCKET NO. 181213-1040
DATE: March 18, 2019

ORDER

Service connection for schizophrenia is granted.

A total disability rating based upon individual unemployability (TDIU) is denied.

REMANDED

The issue of entitlement to a disability rating greater than 10 percent for residual scars from a right wrist and hand laceration is remanded for additional development.

FINDINGS OF FACT

1. The Veteran has a current diagnosis of schizophrenia; he does not meet the criteria for a current diagnosis of any other acquired psychiatric disorder, including bipolar disorder or cognitive disorder.

2. The clinical onset of the Veteran’s schizophrenia coincided with his active duty service.

3. The Veteran’s service-connected residual scars from a right wrist and hand laceration do not render him unable to follow and maintain a substantially-gainful occupation. (Although the Board in this decision grants service connection for schizophrenia, the Agency of Jurisdiction (AOJ) has not yet implemented this grant. As such, schizophrenia has not been considered in determining whether the criteria for a TDIU were met based on the record on appeal).

CONCLUSIONS OF LAW

1. The criteria for service connection for schizophrenia are met. 38 U.S.C. §§ 1131, 5107(b); 38 C.F.R §§ 3.102, 3.303.

2. The criteria for service connection for an acquired psychiatric disorder other than schizophrenia, including bipolar disorder and cognitive disorder, are not met. 38 U.S.C. §§ 1131, 5107(b); 38 C.F.R §§ 3.102, 3.303.

3. The criteria for a TDIU are not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.19.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from September 1979 to August 1980. He filed the claims currently on appeal in July 2015 and May 2017. In November 2015 and July 2017 rating decisions, the AOJ denied the claims.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with the Department of Veterans Affairs (VA)’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

The Veteran selected the Higher-Level Review lane when he submitted his RAMP election form on June 22, 2018. Accordingly, the November 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board of Veterans’ Appeals (Board) and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). 

In adjudicating the claim of entitlement to service connection for an acquired psychiatric disorder, the Board may consider evidence associated with the record between the July 16, 2015 date of claim and the November 16, 2018 rating decision on appeal. In adjudicating the TDIU claim, the Board may consider evidence associated with the record between the May 23, 2017 date of claim and the November 16, 2018 rating decision on appeal. 

Service Connection for an Acquired Psychiatric Disorder

As indicated above in the Conclusions of Law section, the Board finds that the Veteran currently has schizophrenia which first arose in service and continued to the present. Accordingly, the Board finds that service connection for schizophrenia is warranted. Alternatively, the Board finds that the criteria for a current diagnosis of any other acquired psychiatric disorder, including bipolar disorder or cognitive disorder, are not met, and that service connection for an acquired psychiatric disorder other than schizophrenia is not warranted.

In support of this determination, the Board first notes that, generally, establishing service connection requires competent evidence of: (1) a current disability; (2) an in-service precipitating disease, injury, or event; and (3) a causal relationship, i.e., a nexus, between the current disability and the in-service event. Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a).

Turning to the facts of the instant case, the Board first notes that the Veteran has received a current psychiatric diagnosis during the pendency of the claim. Specifically, in June 2018, non-VA psychologist Dr. Mangold diagnosed the Veteran with schizophrenia, following review of the claims file and an interview of the Veteran. 

The record also reflects other psychiatric diagnoses. For example, a December 2014 VA treatment note included diagnoses of bipolar affective disorder, and cognitive disorder. Likewise, in a January 2000 VA treatment record, a primary care physician noted that he received a letter from Lane County Mental Health stating that the Veteran had received diagnoses of posttraumatic stress disorder, schizoaffective disorder, panic disorder with agoraphobia, borderline personality disorder, and alcohol abuse. Lastly, an April 1995 VA hospitalization discharge summary provided mental health diagnoses of alcohol dependence, marijuana abuse, nicotine dependence and borderline personality disorder with antisocial features. In June 2018 correspondence from Dr. Mangold, however, Dr. Mangold explained that the most appropriate diagnosis for the Veteran currently was schizophrenia. Dr. Mangold noted the diagnoses previously rendered, including PTSD, depressive disorder, alcohol disorder, and bipolar disorder, were misdiagnoses of the Veteran’s schizophrenia, which had been present since service.

Next, regarding an in-service event or injury, the Board notes that a review of the Veteran’s service personnel records (SPRs) includes July 1980 memoranda recommending the Veteran’s discharge. Specifically, the Veteran’s commanding officers recommended discharge based upon the Veteran’s: (1) lack of self-discipline as evidenced by disqualifications from a personal reliability program; (2) punishment authorized by Article 15 of the Uniform Code of Military Justice (UCMJ) for alcohol-related incidents; (3) poor attitude towards military living, as evidenced by poor performance; (4) immaturity as reported by supervisors and medical personnel; (5) failure to demonstrate promotion potential; and (6) need for constant supervision to accomplish even menial tasks.

Lastly, regarding a link between a current schizophrenia and service, as noted above, in June 2018, Dr. Mangold reviewed the entire claims file and interviewed the Veteran via videoconference. Dr. Mangold opined that it was more likely than not that the onset of the Veteran’s schizophrenia was during active service. In support of this conclusion, Dr. Mangold summarized the Veteran’s medical history and indicated that the Veteran’s mental health difficulties began soon after enlistment. Dr. Mangold then indicated that the Veteran began abusing alcohol in connection with his inability to adjust, ultimately leading to discharge, despite in-service treatment attempts. The Board finds Dr. Mangold’s opinion to be adequate for adjudicative purposes as it: (1) was based upon a consideration of the Veteran’s entire medical history; (2) described the Veteran’s disability in sufficient detail; and (3) supported its conclusions with a thorough analysis. See Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007).

Accordingly, as the Veteran has satisfied all necessary requirements for service connection for schizophrenia, his appeal is granted. Service connection for an acquired psychiatric disorder other than schizophrenia, however, is denied, as the diagnostic criteria for such are not met.

TDIU 

It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation because of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16. A finding of total disability is appropriate, “when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation.” 38 C.F.R. §§ 3.340(a)(1), 4.15.

A TDIU may be assigned, if the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that if there is only one such disability, it is ratable at 60 percent or more, and that if there are two or more such disabilities, at least one is ratable at 40 percent or more and the combined rating is 70 percent or more. 38 C.F.R. § 4.16(a).

For the purpose of one 60 percent disability, or one 40 percent disability, the following will be considered as one disability: (1) disabilities of one or both upper or lower or one or both lower extremities, including the bilateral factor if applicable; (2) disabilities resulting from a common etiology or a single accident; (3) disabilities affecting a single body system, e.g., orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric; (4) multiple injuries incurred in action; or, (5) multiple disabilities incurred as a prisoner of war. 38 C.F.R. § 4.16(a).

As noted in the introduction to this decision, because the Veteran selected the direct review lane when he submitted his RAMP selection form on December 5, 2018, the Board is prohibited from considering evidence post-dating the November 16, 2018 rating decision on appeal. As such, the Board may not consider the grant of service connection for schizophrenia in this decision in evaluating whether the Veteran is entitled to a TDIU. Excluding schizophrenia, the Veteran’s sole service-connected disability is the residual scars from a right wrist and hand laceration, rated as 10 percent disabling. A review of the relevant evidence of record demonstrates that this particular disability did not render the Veteran unable to secure or follow a substantially gainful occupation from May 23, 2017 to November 16, 2018. Indeed, the Veteran himself did not contend that his residual scars prevented him from securing or following a substantially gainful occupation at any point during the relevant appeal period.

Rather, the Veteran based his claim of entitlement to a TDIU upon a psychiatric disability. However, at the time the November 2018 rating decision was issued he was not service-connected for any psychiatric disability. The Board emphasizes that the compensation level of a disability, to include whether a TDIU is warranted with respect to that disability, is a downstream element, which can only be appealed by filing a new notice of disagreement (NOD) after the underlying benefit of service connection has been granted. See Grantham v. Brown, 114 F.3d 1156, 1158-59 (Fed. Cir. 1997) (an NOD with respect to service-connectedness cannot initiate appellate review of the downstream element of compensation level); Holland v. Gober, 10 Vet. App. 433, 436 (1997). To this end, should the Veteran wish to pursue entitlement to a TDIU upon implementation of the award of service connection for schizophrenia if a TDIU is not awarded at that time, he is encouraged to file a NOD with respect to that decision.

REASONS FOR REMAND

Entitlement to a disability rating greater than 10 percent for residual scars from a right wrist and hand laceration.

The issue of entitlement to an increased rating for residual scars from a right wrist and hand laceration is remanded to correct a duty to assist error that occurred prior to the November 2018 rating decision on appeal. The AOJ obtained an October 2015 VA examination report prior to the November 2018 rating decision on appeal. However, this examination report did not adequately consider all of the symptomology the Veteran asserts he experiences as a result of the residuals of the laceration. Specifically, the October 2015 VA examination identified one scar on the ulnar aspect of the right wrist. However, when the Veteran was granted service connection in January 1989, the rating decision identified a 2-inch scar on the right hand and a ¾ inch transverse scar along the ulnar border of the palm. Remand is warranted so that a new examination may be obtained to clarify the current signs, symptoms and severity of both scars.

Additionally, the October 2015 VA examiner identified that the Veteran experienced numbness and reduced muscle strength of the right hand. On remand, the examiner must address whether this weakness and loss of strength is attributable to the laceration residuals, as such relationship currently is unclear to the Board.

The matter is REMANDED for the following action:

Schedule the Veteran for a VA examination with an appropriate clinician to determine the current nature and severity of his service-connected residual scars from a right wrist and hand laceration. The claims file must be reviewed by the examiner in conjunction with the examination. All appropriate tests and studies should be conducted and the results reported in detail.

The examiner should provide a description of each scar, including the size (in square inches or square centimeters) and location. Additionally, the examiner should discuss whether the scars are superficial (not associated with underlying soft tissue damage) or deep (associated with underlying soft tissue damage); nonlinear; cause limitation of motion; are unstable (has frequent loss of covering of skin over the scar); and/or are painful on examination. 

Furthermore, the examiner should indicate whether any of the scars cause any limitation of the affected right hand and/or wrist—including previously-identified numbness and weakness. The examiner should fully describe the functional effects caused by the residuals of the laceration, including the effects on his occupational and daily functioning.

The examiner must provide a comprehensive report including complete rationales for all opinions and conclusions reached, citing the objective medical findings leading to the conclusions.

(Signature on Next Page)

 

S. C. KREMBS

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD N.S. Pettine, Associate Counsel